Richard COLE, Plaintiff,

v.

AETNA LIFE & CASUALTY, et al., Defendants.

Civil No. 3:97CV2272(AVC).

United States District Court, D. Connecticut.

Aug. 5, 1999.

Richard A. Cole, Newburyport, MA, pro se.

Charles L. Howard, Joseph W. McQuade, Vaughan Finn, Susan G. Fentin, Amy R. Kirschbaum, Shipman & Goodwin, Hartford, CT, Kay Kyungsun Yu, Morgan, Lewis & Bockius, LLP, Philadelphia, PA, for Aetna Life & Casualty Co., United Parcel Service, Inc.

Joseph W. McQuade, Vaugan Finn, Amy R. Kirshbaum, Kay Kyungsun Yu, Morgan, Lewis & Bockius, LLP, Philadelphia, PA, for Sun Oil Co., Aetna Services, Inc., Frost Builders Supplies; Inc.

Peter M. Nolin, Bingham Dana, Hartford, CT, Kevin F. LaFreniere, LeBoeuf, Lamb, Greene & MacRae, Hartford, CT, for Citigroup, Travelers Ins. Co.

Joseph W. McQuade, Vaugan Finn, Amy R. Kirshbaum, Kay Kyungsun Yu, Morgan, Lewis & Bockius, LLP, Philadelphia, PA, John R. Horvack, Jr., Carmody & Torrance, Waterbury, CT, for Moorco Intl Inc.

Joseph W. McQuade, Vaugan Finn, Amy R. Kirshbaum, Kay Kyungsun Yu, Morgan, Lewis & Bockius, LLP, Philadelphia, PA, Kay Kyungsun Yu, Morgan, Lewis & Bockius, LLP, Philadelphia, PA, for Frito Lay, Inc., Electric Materials Co., Ethan Allen, Employee Welfare Benefit Plan, Inland Container.

Joseph W. McQuade, Vaugan Finn, Amy R. Kirshbaum, Kay Kyungsun Yu, Morgan, Lewis & Bockius, LLP, Philadelphia, PA, for Pat/Van De Kamp, UPS Health Care Package.

## RULING ON THE DEFENDANTS' MOTIONS TO DISMISS

COVELLO, Chief Judge.

This is an action for damages in which the plaintiff, Richard Cole, alleges that the defendants failed to reimburse him for medical services he rendered to patients the defendants either insured or covered under an employee benefit plan. Specifically, Cole alleges that he "has not re-ceived reimbursement from [the defendants] because of bad faith and fraud in denying [his] claims." The complaint purports to state a cause of action for breach of contract, unjust enrichment, fraud, and violations of the Connecticut Unfair Insurance Practices Act (CUIPA), Conn.Gen. Stat. §§ 38a–815, *et seq.*, the Connecticut Unfair Trade Practices Act (CUTPA), Conn.Gen.Stat. §§ 42–110a, *et seq.*, and the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001, *et seq.*

The defendants have filed the within motions to dismiss, pursuant to Rules 12(b)(1), (5), and (6) of the Federal Rules of Civil Procedure, based upon: 1) improper service of process; 2) lack of subject matter jurisdiction; 3) ERISA preemption; 4) failure to state a cause of action upon which relief can be granted; 5) improper ERISA defendants; 6) improper joinder; and 7) lack of standing. The issues before the court are: 1) whether Cole's service of process was proper; 2) whether the court lacks subject matter jurisdiction over the non-ERISA claims; 3) whether the state law causes of action are preempted by ERISA; 4) whether the complaint states a valid cause of action against Travelers; 5) whether the defendants who are not employee welfare benefit plans can be defendants to an ERISA suit; 6) whether Cole has properly joined the defendants; and 7) whether Cole has standing to sue under ERISA. The court will not consider the defendants' arguments with respect to the statutes of limitations because the factual record is insufficient to determine whether the plaintiff's claims are time-barred. For the reasons set forth below, the court grants the motions to dismiss in part.

### FACTS

The third amended complaint alleges the following: the plaintiff, Richard A. Cole, now a resident of Massachusetts, formerly practiced medicine in Erie, Pennsylvania. Cole rendered medical services

to individuals employed by, or whose spouses or parents were employed by United Parcel Service, Inc., Welchs, Sun Oil Co., Inland Container Co., Ethan Allen, PET/Van de Kamp, The Electric Materials Co., Frito Lay, Inc., Moorco International, Inc., and Frost Builders Supplies, Inc. As part of their own or their spouses' or parents' employment contract with these employers, Aetna, or one of its corporate entities, provided individuals heath care benefits. Cole also provided medical services to one Debra Bischoff and one Pearl Sarnowski. Bischoff purchased an auto insurance policy from Aetna and Sarnowski purchased an unspecified insurance policy from Aetna. Travelers subsequently purchased both the Bischoff and Sarnowski policies from Aetna.[1]

On October 24, 1997, Cole filed the original complaint. On January 29, 1998, Cole filed the First Amended Complaint. On August 13, 1998, Cole filed the Second Amended Complaint. On February 1, 1999, Cole filed the within Third Amended Complaint.

On February 24, 1999, Travelers and Citigroup filed their within motion to dismiss, and on April 2, 1999, the remaining defendants filed their within motion to dismiss.

### STANDARD

A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(1) must be granted if the plaintiff has failed to establish jurisdiction. "Federal courts are empowered to hear only those cases that (1) are within the judicial power of the United States, as defined by the Constitution, and (2) that have been entrusted to them by a jurisdictional grant by Congress." 13 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure*

§ 3522 (1984); *see also Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). If the district court concludes that it does not have subject matter jurisdiction, it must dismiss the case. *See Golden Hill Paugussett Tribe of Indians v. Weicker,* 839 F.Supp. 130, 136 (D.Conn.1993).

In deciding a Rule 12(b)(1) motion, the court construes the complaint broadly and liberally in conformity with the principle set out in Fed.R.Civ.P. 8(f).[2] "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Atlantic Mut. v. Balfour Maclaine International,* 968 F.2d 196, 198 (2nd Cir.1992). The district court may look outside the pleadings to affidavits and other materials that either support or challenge the court's subject matter jurisdiction. *See Antares Aircraft v. Federal Republic of Nigeria,* 948 F.2d 90 (2d Cir. 1991); *Kamen v. American Tel. and Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir.1986); *Exchange Nat'l Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126, 1130 (2d Cir. 1976), *cert. denied sub nom.,* 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5) must be granted if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules of Civil Procedure. Rule 4(h), which deals specifically with the service of summons on corporations, provides, in pertinent part:

[u]nless otherwise provided by federal law, service upon a domestic of foreign corporation ... and from whom a waiver of service has not been obtained and filed, shall be effected: (1) in a judicial district of the United States ... by delivering a copy of the summons and of the complaint to an officer, a managing

*See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

---

1. Travelers insists that it does not insure Sarnowski, but instead holds a homeowner's insurance policy for one Annette Vaydanich, on whose property Sarnowski was injured. However, on a motion to dismiss, the court must view all facts in the complaint as true.

2. "All pleadings shall be so construed as to do substantial justice." Fed.R.Civ.P. 8(f).

or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

Fed.R.Civ.P. 4(h)(1). Once validity of service has been challenged, it becomes the plaintiff's burden to prove that service of process was adequate. *See Three Crown Ltd. Partnership v. Caxton Corp.,* 817 F.Supp. 1033 (S.D.N.Y.1993); *Lee v. Carlson,* 645 F.Supp. 1430, 1432 (S.D.N.Y. 1986).

A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) involves a determination as to whether the plaintiff has stated a claim upon which relief may be granted. *See Fischman v. Blue Cross Blue Shield,* 755 F.Supp. 528 (D.Conn.1990). The motion must be decided solely on the facts alleged. *See Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985). A court must assume all factual allegations in the complaint to be true and must draw all reasonable inferences in favor of the non-moving party. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Such a motion should be granted only where no set of facts consistent with the allegations could be proven which would entitle the plaintiff to relief. *See Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The issue is not whether the plaintiff will prevail, but whether he should have the opportunity to prove his claims. *See Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## DISCUSSION

### I. Service of Process

The defendants first claim that "[t]he plaintiff has failed to comply with the rules relating to service of process set forth in the Federal Rules of Civil Procedure with respect to all of the defendants." Specifically, the defendants argue: "each time he has attempted service of process on a de-fendant in this action, the plaintiff has steadfastly refused to effectuate service by personal delivery pursuant to Rule 4(e) & (h)."

Cole responds: "[the plaintiff sent] a copy of the summons and complaint by certified mail return receipt requested, [and] the agent of the corporation signed the return receipt card acknowledging receipt of a package containing the summons and complaint." Cole further argues that the individuals who signed the return receipt cards were "agents" of each defendant authorized to receive summons and complaint. Specifically, he argues: "[the p]laintiff did not send a waiver of service since that is not mandatory as per [Fed. R.Civ.P.] 4(d)(2)."

■■■ The defendants have submitted affidavits supporting their contention that Cole has not properly effected service on the defendants. The affidavits relating to: (1) Aetna Life & Casualty; (2) Aetna Services, Inc.; (3) Aetna U.S. Healthcare; (4) Travelers a.k.a. The Travelers Insurance Company; (5) United Parcel Service; (6) Welchs; (7) Moorco International Employee Welfare Benefit Plan; and (8) Frost Builders Supplies, Inc. Employee Welfare Benefit Plan state only that the plaintiff mailed the summons and complaint to those defendants and did not include a request for a waiver. A request for a waiver of service is ordinarily required. However, while the court recognizes their importance, slavish adherence to the technical requirements of the rules is particularly inappropriate in the case of a *pro se* plaintiff. The affidavits of these defendants do not sufficiently contradict Cole's contention that the person who signed the return receipt was an agent of the corporation or welfare benefit plan authorized to accept service of summons. Therefore, the motion to dismiss for failure to properly serve these defendants is denied.

However, the affidavits relating to: (1) United Parcel Service Employee Welfare Benefit Plan, (2) Welchs Employee Wel-

fare Benefit Plan, (3) Sun Oil Company Employee Welfare Benefit Plan, (4) Inland Container Employee Welfare Benefit Plan, (5) Ethan Allen Employee Welfare Benefit Plan, (6) PET/Van de Kamp Employee Welfare Benefit Plan, (7) The Electric Materials Company Employee Welfare Benefit Plan, and (8) Frito Lay Employee Welfare Benefit Plan expressly state that "no authorized agent for service has been served" or that "no person at that location is authorized to accept service." These statements *do* contradict the plaintiff's claims that service was properly effectuated. The affidavit regarding Citigroup states that at the time the plaintiff attempted to serve Citigroup with a summons and a copy of the complaint, Citigroup had not yet been formed. This, too, sufficiently contradicts Cole's assertion that service was proper.

However, while noting that Cole has failed to properly serve some defendants, the court is reluctant to dismiss the action because of his *pro se* status, and because it appears that proper service may be effectuated. The court, therefore, quashes the service of the summons and complaint to the eight defendants noted above whose affidavits sufficiently contradict the plaintiff's assertion that service was properly executed and grants Cole sixty (60) days from the date of the filing of this ruling to *personally* serve those defendants pursuant to the provisions of Fed.R.Civ.P. 4(h) or to serve the defendants by mail *including a request for a waiver of service* pursuant to the provisions of Fed.R.Civ.P. 4(d)(2). The complaint against Citigroup is dismissed, as it is clear that Citigroup did not exist at the time of the alleged incidents. Hence, "no set of facts consistent with the allegations could be proven [with respect to Citigroup] which would entitle the plaintiff to relief." *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## II. Subject Matter Jurisdiction

The defendants next argue that the court lacks subject matter jurisdiction over the plaintiff's non-ERISA claims. Specifically, the defendants argue:

> [b]ecause no federal question exists as relates to [claims for services rendered to Debra Bischoff in the amount of $14,-691.00 and Pearl Sarnowski in the amount of $3,935.00, both of which are] non-ERISA claims, the plaintiff must establish subject matter jurisdiction under [28 U.S.C. § 1132(a) ].... [T]he plaintiff's non-ERISA claims ... must be dismissed for lack of subject matter jurisdiction because neither of these claims meets the jurisdictional amount in controversy requirement of $75,000.

Cole responds that "[t]he non-ERISA claims may be considered under pendent jurisdiction." Specifically, Cole argues that "[t]hese claims arise from the same behavior of Aetna in ignoring [p]laintiff's claims, and only incidentally cannot be pursued under ERISA, but rather state law.... These two claims can be most efficiently handled by this court."

■ "The statutory concept of supplemental jurisdiction[28 U.S.C. § 1367(a)], codified and expanded somewhat the earlier judge-made doctrines of pendent and ancillary jurisdiction." *Purgess v. Sharrock,* 33 F.3d 134, 138 (2d Cir.1994). 28 U.S.C. § 1367(a) provides in relevant part:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C.A. § 1367(a) (West 1993). "Just as with the prior law of pendent jurisdiction, the exercise of supplemental jurisdiction is left to the discretion of the district court...." *Purgess v. Sharrock,* 33 F.3d 134, 138 (2d Cir.1994).

The Supreme Court, in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct.

1130, 16 L.Ed.2d 218 (1966), discussed what considerations should determine whether a district court asserts supplemental jurisdiction. A district court should consider

> judicial economy, convenience, and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims.... Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.

*Id.* at 726, 86 S.Ct. 1130; *see also Seabrook v. Jacobson,* 153 F.3d 70, 71–72 (2d Cir. 1998).

■ The complaint here alleges that, as part of their employment contracts, the individuals that Cole treated received health care benefits through Aetna. The complaint further alleges that Aetna sold Bischoff and Sarnowski separate insurance policies, which Travelers subsequently bought from Aetna. Finally, the complaint alleges that Aetna and Travelers have failed to pay the plaintiff for the medical services he provided the various individuals he treated, including Bischoff and Sarnowski.

Taking all facts in the complaint as true, as this court must when considering a motion to dismiss, *see Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), the court determines that while the factual scenarios related to the ERISA claims and the Bischoff and Sarnowski claims differ, the claims involve the same plaintiff and the same defendants and involve the same allegation of non-payment for medical services rendered. A thoughtful consideration of "judicial economy, convenience, and fairness to litigants," *see Seabrook v. Jacobson,* 153 F.3d 70, 71 (2d Cir.1998), dictates that this court should not dismiss the state law claims for lack of subject matter jurisdiction and should instead assert supplemental jurisdiction over those causes of action.

### III. ERISA Preemption

The defendants next assert that "[a]ll of the plaintiff's state law causes of action as relates to the ERISA [p]lans asserted in Counts [I through V] of the plaintiff's [t]hird [a]mended [c]omplaint must be dismissed on the basis of ERISA preemption." Specifically, the defendants argue that "state law claims that challenge an insurer's claims evaluation process and denial of benefits under the terms of an [e]mployer [w]elfare [b]enefit [p]lan, as well as the administration of an ERISA plan, *relate to* that plan and are preempted."

Cole responds: "[t]he stated causes of action ... of the [third] [a]mended [c]omplaint [relate] to the non-ERISA claims and should stay in the case as the court considers these claims under pendent jurisdiction." Cole further argues that: "it would be most economical for all to have one large Aetna case rather than splinter the case."

29 U.S.C. § 1144(a) provides, in pertinent part: "[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all [s]tate laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C.A. § 1144(a) (West 1999).

In *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Court stated: "the express preemption provisions of ERISA are deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.'" *Id.* at 45–46, 107 S.Ct. 1549 (quoting *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 523, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981)). In *Aetna Life Ins. Co. v. Borges,* 869 F.2d 142 (2d Cir.1989), the court stated, "[t]he words 'relate to' in section [1144(a) ] are to be interpreted broadly; ERISA does not preempt only state laws specifically designed to affect employee benefit plans or dealing with the subject matters covered

by ERISA—reporting, disclosure, fiduciary responsibility, and the like." *Aetna Life Ins. Co. v. Borges,* 869 F.2d 142, 144 (2d Cir.1989).

However, the Supreme Court has noted that not all laws that have an impact on ERISA plans are preempted. "Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Following a survey of cases to determine which state laws "relate to" ERISA plans and which have only a "tenuous, remote, or peripheral" impact on ERISA plans, the court in *Borges* determined that:

> laws that have been ruled preempted are those that provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee. Those that have not been preempted are laws of general application—often traditional exercises of state power or regulatory authority—whose effect on ERISA plans is incidental.

*Id.* at 146. Finally, the court in *Borges* stated: "[w]hat triggers ERISA preemption is not just any indirect effect on administrative procedures but rather an effect on the primary administrative functions of benefit plans, *such as determining an employee's eligibility for a benefit and the amount of that benefit.*" *Id.* at 146–147 (emphasis added).

■ The complaint here sets forth causes of action for breach of contract, unjust enrichment, fraud, and violations of CUTPA and CUIPA. Cole seeks to be reimbursed for medical services he provided to the individuals covered by the ERISA plans named in the complaint. The gravamen of these causes of action is that the employee benefit plans covered the services the plaintiff provided these individuals and that Aetna and the ERISA plans are willfully withholding payment for those services. As noted by the court in *Borges,* these causes of action are precisely of the type that congress sought to preempt with ERISA. *See Aetna Life Ins. Co. v. Borges,* 869 F.2d 142, 146–147 (2d Cir.1989); *see also Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (holding that employee's common law causes of action of breach of contract, and fraud in the inducement were preempted by ERISA). Therefore, Counts I through IV are dismissed with respect to the ERISA claims, as they are preempted by ERISA.

■ Count V purports to state a cause of action for punitive damages. In the alternative, Count V is a form of a prayer for relief. The defendants challenge the inclusion of punitive damages in an ERISA claim. In *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), the Supreme Court held that "the entire text of [29 U.S.C. § 1109] (involving a breach of a fiduciary duty) persuades us that Congress did not intend that section to authorize any relief except for the plan itself (which does not include punitive damages) ." *Id.* at 144, 105 S.Ct. 3085. The Court went on to discuss the likelihood of an implied action for punitive damages under other ERISA sections.

> The six[3] carefully integrated civil enforcement provisions found in [29 U.S.C. § 1132(a) ] of the statute as finally enacted ... provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly. The assumption of inadvertent omission is rendered especially suspect upon close consideration

---

**3.** In 1993 and 1994, Congress added § 502(a)(7–9) to ERISA (29 U.S.C. § 1132(a)(7–9)). These three paragraphs are very similar in nature and relief to the six referenced by the Supreme Court in *Massachusetts Mut.,* and do not affect the court's conclusion regarding the dismissal of Count V.

of ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a "comprehensive and reticulated statute." *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 361, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980).

*Id.* at 146, 105 S.Ct. 3085. "In light of the overwhelming weight of authority supporting [the] defendant's position that punitive damages are not available to [the] plaintiff" *Schonholz v. Long Island Jewish Medical Ctr.*, 858 F.Supp. 350, 355 (E.D.N.Y.1994), the court concludes that Count V is dismissed with respect to the ERISA claims.

## IV. Failure to State a Cause of Action Against Travelers

### A. CUIPA and CUTPA

Travelers first claims that "the Connecticut Supreme Court has found that, although both CUTPA and CUIPA apply to the conduct of an insurance company in handling its claims, conduct which does not violate CUIPA cannot form the basis of a CUTPA claim against an insurance company. *Mead v. Burns*, [199 Conn. 651, 509 A.2d 11 (1986)]." Specifically, Travelers argues:

> the Plaintiff has failed to sufficiently allege a CUIPA violation because he has merely alleged that Travelers has engaged in dilatory tactics and bad faith with respect to the Bischoff claim.... Consequently ... under Connecticut law, the [p]laintiff has thus necessarily failed to properly allege a CUTPA claim. Thus, based on the foregoing, the [c]ourt should dismiss Count III of the Third Amended Complaint as it applies to Travelers for failure to state a claim upon which relief may be granted.

Cole has not responded to this argument.

In *Mead v. Burns*, 199 Conn. 651, 509 A.2d 11 (1986), the Connecticut Supreme Court stated: "we believe that claims of unfair settlement practices under CUIPA require a showing of more than a single act of insurance misconduct." *Id.* at 659, 509 A.2d 11. The court also discussed what impact CUTPA had on the insurance industry. The court stated: "[w]e now expressly hold, as have a number of trial courts in this state, that the legislature has manifested an intention to make insurance practices the subject of two regulatory statutes, CUIPA and CUTPA." *Id.* at 663, 509 A.2d 11. Finally, the court stated that "[based on] our conclusion ... that a single failure to conduct a reasonable investigation of an insurance claim, in the absence of a 'general business practice,' does not constitute a violation of CUIPA, [the plaintiff may not] pursue a CUTPA violation for a single failure to investigate." *Mead v. Burns*, 199 Conn. 651, 663–664, 509 A.2d 11 (1986). Therefore, if the plaintiff fails to allege a "general business practice" of violations of CUIPA, the plaintiff necessarily cannot prove a CUTPA violation for the same alleged misconduct.

The complaint here alleges "bad faith in the settlement of claims, misrepresentation as to benefits, delay in the payment of claims, and a pattern of behavior which works as a fraud and deception against the public." Specifically, the complaint alleges that Travelers has breached their contract with Bischoff and Sarnowski by refusing to pay Cole for medical services rendered to them. Although the court is doubtful that *two* alleged claims of misconduct constitute a "general business practice," the court is again mindful of Cole's *pro se* status and, at this early stage of the pleadings, will not dismiss this cause of action.

### B. Fraud

Travelers next argues that Cole has failed to plead fraud with particularity. Specifically, Travelers argue that "[c]ourts have consistently interpreted [Rule 9(b) of the Federal Rules of Civil Procedure] to require that the pleading party must state the time, place, and content of the alleged fraudulent communication, and the reason why the communication is false or mislead-

ing.... The [p]laintiff has failed to state any specific facts which would support its broad allegation that Travelers committed fraud."

Cole has not responded to this argument.

■ In *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2nd Cir.1994), the court discussed the pleading requirements of Rule 9(b), albeit in the context of pleading securities fraud. The court stated that "a complaint making such allegations must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994) (internal quotes removed). *See also Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989).

■ Although the complaint here sets forth, in exhibit form, examples of allegedly fraudulent "statements" from other defendants, the complaint is devoid of *any* specific allegations of fraudulent behavior on the part of Travelers. The complaint here states that Travelers and the other defendants "have done everything in their power to prevent [the plaintiff] from collecting money due him." This failure to plead fraudulent behavior with any degree of specificity or particularity with respect to Travelers is fatal to this cause of action. The court, therefore, grants Travelers' motion to dismiss Count IV (Fraud) of the third amended complaint.

## C. Punitive Damages

Travelers next argues that "punitive damages are precisely what the name implies—a type of damages which are awarded based on some other underlying cause of action against a defendant. The assertion of punitive damages does not constitute a cause of action in and of itself."

Cole has not responded to this argument.

Count V of the complaint restates the allegations of Counts I through IV and asks for punitive damages to be awarded to the plaintiff. The court concludes that Count V of the third amended complaint fails to state a separate cause of action upon which relief may be granted. Therefore, Count V of the complaint is dismissed as a cause of action with respect to all defendants, and, as noted *supra*, is not available as a prayer for relief for the ERISA causes of action. However, the court makes no determination as to whether punitive damages are an appropriate prayer for relief based upon Travelers' alleged conduct.

## V. Proper ERISA Defendants

The defendants next argue that "[a]ll defendants that are not employee welfare benefit plans must be dismissed with respect to Count VI asserting ERISA violations." Specifically, the defendants argue: "[i]t is well-established that '[a]n ERISA plan is the only proper defendant when a claim is made for benefits or for a clarification of benefits under the ERISA civil enforcement statute. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). *See Chilcote v. Blue Cross & Blue Shield*, 841 F.Supp. 877, 880 (E.D.Wis.1993).' *Roeder v. ChemRex Inc.*, 863 F.Supp. 817, 828 (E.D.Wis.1994)."

Cole responds that "[u]pon information and belief, UPS and Welchs are deeply involved in adjudicating the claims of their employees, and in the absence of any verified evidence to the contrary, they control whether or not benefits are paid on their behalf, and on that basis alone should be named as defendants."

■ In *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186 (11th Cir.1997), the court stated: "[t]he proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan." *Id.* at 187. In *Rosen v. TRW, Inc.*, 979 F.2d 191 (11th Cir.1992), the court stated that "if a company is administering the plan, then it can be held

liable for ERISA violations...." *Id.* at 193–194 (relying on *Law v. Ernst & Young*, 956 F.2d 364, 373–374 (1st Cir. 1992)).

At this stage of the pleadings, when the court must view all allegations in the complaint ass true, *see Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), the court determines that the complaint sufficiently alleges that Aetna, United Parcel Service, and Welchs controlled the administration of the various ERISA plans named as defendants. Therefore, the motion to dismiss the ERISA claims against Aetna, United Parcel Service and Welchs is denied.

### VI.  *Improper Joinder*

The defendants next argue that "[i]n violation of Rule 20(a) of the Federal Rules of Civil Procedure, the plaintiff has improperly joined claims against multiple defendants in this action." Specifically, the defendants argue that:

> [c]learly, each of Cole's patients received specific treatment for individual diagnoses that constitute separate transactions or occurrences or a series of transactions [ ] or occurrences with regard to each of the plaintiff's patients.... The term and provisions of each of the ten ERISA [p]lans vary from one [p]lan to another. Each ERISA [p]lan may differ with respect to who has the final decision-making authority on claims adjudication matters, [Aetna Life Insurance Company] or the [p]lan [s]ponsor.... Consequently, the plaintiff's claims neither arise from the same transaction or occurrence nor raise common questions of law and fact and joinder is improper under Rule 20(a).

Cole responds that "[t]hese claims should logically be joined since they all stem from the refusal of Aetna to deal in good faith." Specifically, Cole argues that: "[m]ost of these claims have been neither paid nor denied. Rather it is the routine business practice of Aetna to sit on the claims in the hopes that physicians will give up. This behavior pervades each and every claim here."

Rule 20(a) provides, in pertinent part:

> [a]ll persons ... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

Fed.R.Civ.P. 20(a). In *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Court stated:

> "[u]nder the [Federal Rules of Civil Procedure], the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties, and remedies is strongly encouraged." *United Mine Workers v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). "The purpose of [Rule 20] is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." 7 Charles A. Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 1652 (1986).

In *Nassau County Ass'n of Ins. Agents, Inc. v. Aetna Life & Casualty Co., et al.*, 497 F.2d 1151 (2d Cir.1974), the court stated that "by joining ... 164 defendant companies in one action [the plaintiffs] have failed to comply with Rule 20(a) of the Federal Rules of Civil Procedure." *Id.* at 1154. In citing the reasons for its holding that joinder was improper, the court noted, "[h]ere there has been no showing of a right to relief arising from the same transaction or series of transactions. No allegation of conspiracy or other concert of action has been asserted. No connection at all between the practices engaged in by each of the 164 defendants has been alleged." *Id.*

The complaint here alleges that Aetna, as administrator for the ERISA plans named in the complaint, and the ERISA plans themselves, acted in concert in a practice of bad faith by denying Cole's requests for payment of benefits. The complaint alleges a series of transactions where Cole's requests for payments were denied or ignored by Aetna and seeks relief directly from Aetna. In the alternative, Cole seeks relief from the ERISA plans themselves. There is a common question of fact whether the defendants have, in a closely related series of transactions, wrongly denied Cole benefits allegedly due him under the ERISA plans. The court determines that Cole has asserted alternative requests for relief against the defendants, that the complaint alleges a series of related transactions or occurrences, and that there is a question of fact common to all defendants. Therefore, Cole has properly joined the defendants under Rule 20(a).

### VII. Standing

The defendants next argue that "Cole, a former health care provider, lacks standing to bring suit under ERISA." Specifically, the defendants argue that "ERISA expressly confers standing to file suit upon only four types of parties: participants; beneficiaries; fiduciaries; and the Secretary of Labor." The defendants further state that "[i]t is unclear whether health care providers have standing to file a suit for benefits provided to their patients; but if they do have standing, it can only be pursuant to a valid assignment of benefits." Here, the defendants argue, "the plaintiff has not demonstrated a valid assignment of benefits. Mere authorizations for direct payment to a medical care provider do not constitute valid assignments."

Cole responds that "[o]bviously, if [the plaintiff] was paid directly by the plan he must have become entitled to benefits under the plan." Specifically, quoting language from a ruling from the Southern District of New York, he argues that "[t]o

bar assignments completely ... would prevent plan members with limited finances from receiving medical care. Further to deny standing to health care providers would discourage providers from becoming assignees and possibly from helping beneficiaries who were unable to pay them 'upfront.'" *Protocare of Metro. N.Y., Inc. v. Mut. Ass'n Adm'r, Inc., et al.,* 866 F.Supp. 757, 762 (S.D.N.Y.1994). Cole has provided copies of authorizations signed by his patients for direct payment of "authorized medical benefits" to him for medical services rendered.

In *I.V. Serv. of Am., Inc. v. Trustees of American Consulting Eng'rs Council Ins. Trust Fund,* 136 F.3d 114 (2d Cir.1998), the court stated:

"[w]e agree with our sister circuits that, under federal common law, the assignees of beneficiaries to an ERISA-governed insurance plan have standing to sue under ERISA. *See, e.g., Cromwell v. Equicor–Equitable HCA Corp.,* 944 F.2d 1272, 1277 (6th Cir.1991); *Kennedy v. Connecticut Gen. Life Ins. Co.,* 924 F.2d 698, 700 (7th Cir.1991); *Hermann Hosp. v. MEBA Med. & Benefits Plan,* 845 F.2d 1286, 1289 (5th Cir.1988); *Misic v. Building Serv. Employees Health & Welfare Trust,* 789 F.2d 1374, 1379 (9th Cir.1986)."

*I.V. Serv. of Am., Inc. v. Trustees of American Consulting Eng'rs Council Ins. Trust Fund,* 136 F.3d 114, 117 n. 2 (2d Cir.1998). In *I.V. Services,* the court stated that "[the patient] contracted with I.V. Services to provide the home drug therapy treatments.... In exchange, he assigned to I.V. Services his insurance benefits under the plan." *Id.* at 117. The court, however, did not specify exactly how the patient assigned his benefits to I.V. Services.

The cases cited by the second circuit in *I.V. Services* offer little insight into what type of assignment would confer upon the assignee standing to sue under ERISA. In *Cromwell v. Equicor–Equitable HCA Corp.,* 944 F.2d 1272 (6th Cir.1991), the patient's husband "signed an 'Assignment

of Insurance Benefits' clause authorizing '[p]ayment directly to . . . [the health care provider] of any and all sums of money otherwise payable to me under the terms of the home health provisions of said group policy or contract.'" *Id.* at 1274. The sixth circuit held that an assignee could sue under ERISA. *See id.* at 1278.

In *Kennedy v. Connecticut Gen. Life Ins. Co.,* 924 F.2d 698 (7th Cir.1991), the health care provider was a doctor who contracted with a patient to receive "whatever [direct payment] the insurer would pay" for medical services rendered. *See id.* at 699. The court held that the *possibility* of direct payment of benefits was enough to establish subject matter jurisdiction (or, as other courts have phrased it, to establish standing to sue). *See id.* at 700–701. The court also noted that "an assignee cannot *collect* unless he establishes that the assignment comports with the plan." *Id.* at 700. The court relied on *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 117–118, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) for the proposition that, like a participant, the court should define a beneficiary as a person with "a colorable claim to benefits . . . ." *Kennedy v. Connecticut Gen. Life Ins. Co.,* 924 F.2d 698, 700 (7th Cir.1991). Therefore, standing does not rely on success, but on an arguable claim. *See id.* at 700.

In *Hermann Hosp. v. MEBA Medical & Benefits Plan,* 845 F.2d 1286 (5th Cir. 1988), the court expressly held that ERISA health care benefits are assignable. *See id.* at 1289. However, the court did not rule on whether the specific assignment in question—a patient's assignment of benefits to the hospital upon her admission to the hospital—was a valid assignment sufficient to confer upon the hospital standing to sue under ERISA. *See id.* at 1290.

Finally, in *Misic v. Bldg. Serv. Employees Health and Welfare,* 789 F.2d 1374 (9th Cir., 1986), the court held that a health care provider, as assignee, could sue under ERISA. *See id.* at 1379. The court stated:

> [n]either the specific purpose of the anti-assignment provision [prohibiting assignment of *pension* benefits as opposed to *health care* benefits] nor the general goal of the statute would be served by prohibiting the type of assignments involved in this case—*assignment to the person who provided the beneficiary with the health care of the beneficiaries' right to reimbursement for the cost of that care.*

*Id.* at 1377 (emphasis added). The court further stated that the plaintiff doctor was suing "in the shoes" of the beneficiaries who had assigned their right of reimbursement to him and that the assignment in that case conferred upon the doctor derivative standing to sue. *See Id.* at 1378.

Without deciding the specific issue of whether the authorizations for direct payment constitute valid assignments of benefits, the court nonetheless concludes that by asserting allegations of "assignment to the [plaintiff] who provided the beneficiary with the health care of the beneficiaries' right to reimbursement for the cost of that care," *Misic v. Bldg. Serv. Employees Health and Welfare,* 789 F.2d 1374, 1377 (9th Cir., 1986), and thereby alleging a "colorable claim to benefits," *Kennedy v. Connecticut Gen. Life Ins. Co.,* 924 F.2d 698, 700 (7th Cir.1991), the plaintiff has adequately alleged standing to sue under ERISA.

## CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss (document nos. 83 and 89) are granted in part and denied in part.